UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
AL M. KIRBY                                    :
                                               :
                              Plaintiff,        :
                                               :       MEMORANDUM & ORDER
          -against-                         :
                                               :       16-cv-7161 (ENV) (SIL)
                                               :
COUNTY OF SUFFOLK, SUFFOLK COUNTY               :
POLICE OFFICER DONALD SANTAMARIA, in             :
his official and individual capacity, SUFFOLK    :
COUNTY POLICE OFFICERS JOHN DOES 1–4             :
in their official and individual capacities,     :
                                               :
                            Defendants.      :
------------------------------------------------------------- x

VITALIANO, D.J.

      Plaintiff Al M. Kirby filed this action against the County of Suffolk (the "County") and Suffolk County Police Officers Donald Santamaria and John Does 1–4, alleging, upon the claimed authority of 42 U.S.C. §§ 1981, 1983, and 1985, violations of his federal constitutional rights, along with state law claims of negligence, battery, abuse of process, and intentional infliction of emotional distress. Dkt. 5 ("Am. Compl."). Defendants move for summary judgment as to the federal claims and urge the Court to decline to exercise jurisdiction over the state law claims. *See* Dkt. 33; Dkt. 33-15 ("Defs.' Mem."). For the reasons set forth below, the motion is granted in part and denied in part.

Background[1]

      The story begins with Kirby catching up with friends at a bar in Mastic on January 29, 2016 at approximately 9:00 pm. Dkt. 33-3, Defs.' Rule 56.1 Statement ("Defs.' 56.1"), ¶ 2. He

---

[1] The material facts are drawn from the pleadings, the Local Rule 56.1 filings and the parties' evidentiary submissions.

1

had driven to the bar, but, after about four hours of eating and imbibing, he decided to take a taxicab home. *Id.* ¶¶ 3–4. When he got home, Kirby realized he had left his wallet, which contained 25 credit cards, in his vehicle, back at the bar and in a neighborhood where Kirby believed it may be broken into. *Id.* ¶ 4. Fearing the worst, he drove his wife's 2012 Cadillac Escalade back to retrieve his wallet. *Id.* ¶¶ 4–5. Kirby drove to his vehicle without incident, retrieved his wallet, and set off for home. *Id.* ¶ 6.

Kirby was less fortunate on this leg of his travels. He admits that he "didn't fully stop" at a stop sign at the intersection of Main Street and River Road. *Id.*; Dkt. 33-18, Pl.'s Rule 56.1 Statement ("Pl.'s 56.1"), ¶ 6. As for other details, Kirby testified he was driving at about the speed limit. Pl.'s 56.1 ¶ 6. Officer Santamaria tells a different story. At the intersection, Kirby failed to stop, and, instead, drove through the intersection at about 40 m.p.h. Defs.' 56.1 ¶ 18. Kirby then accelerated, he said, to 70 m.p.h. *Id.* Engaging his emergency lights, Officer Santamaria pursued Kirby, *id.* ¶¶ 7, 19, who did not immediately see the pursuing police car. Pl.'s 56.1 ¶ 7. Kirby concedes that he drove "some distance" before noticing Officer Santamaria's pursuit, then pulled over immediately. *Id.* ¶ 7.

But, there is more to the radical divergence of the two accounts of the pursuit. Officer Santamaria claims that he saw Kirby's reverse lights activate after Kirby stopped—a fact Kirby denies. *Id.* ¶ 19; Defs.' 56.1 ¶ 19. Fearing that Kirby was going to back the Escalade into the patrol car, Officer Santamaria stated, he radioed that he had made the stop, got out of his patrol car, and shined a flashlight into Kirby's SUV (although, he also claims, he could not see through its tinted windows). Defs.' 56.1 ¶¶ 19–20. Notwithstanding the tint, because he claims the front driver's-side window was open, Officer Santamaria says he could see Kirby looking at him in the side-view mirror and "moving around" in the car. *Id.* & Dkt. 33-6, Defs.' 56.1, Ex. C

2

("Santamaria Dep."), at 29–31. (Kirby denies it all, professing that he kept still the entire time with his hands in the ten and two position on the steering wheel. Pl.'s 56.1 ¶ 20.) Unholstering his service pistol, Officer Santamaria swears he ordered Kirby to place his hands on the steering wheel, sharply contradicting Kirby's retelling. Defs.' 56.1 ¶¶ 20–21. After two or three more requests, he claims, Kirby "spun toward him with a black object in his hand." *Id.* Kirby, on the other hand, claims Officer Santamaria said nothing to him and denies he moved his hands off the steering wheel. Pl.'s 56.1 ¶ 20. There is no dispute, however, that Officer Santamaria fired a single round at Kirby, which lodged in the driver's-side door. Defs.' 56.1 ¶ 22. Kirby was not hit. *Id.*

After the discharge of the firearm, the divergence in the two stories, if anything, grows wider. Kirby either yelled "it's just a cell phone, it's just a cell phone," as Officer Santamaria recollects, *id.* ¶ 23, or, according to Kirby, he said three times "you don't have to do this" while sticking his hands out of the open window. Pl.'s 56.1 ¶ 23. They also dispute whether Officer Santamaria asked Kirby if he was okay, and whether Kirby responded that he was. Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.

At any rate, Kirby testified that Officer Santamaria ordered him to "[o]pen the door, get out of the vehicle, walk backwards to [his] voice, get on [his] knees and put [his] hands behind [his] head." Pl.'s Rule 56.1 Counterstatement, Dkt. 33-18, at 11 ("Pl.'s Counterstatement"), ¶ 35. Kirby remembers complying with Officer Santamaria's orders and telling him, "I have a medical condition. I have a titanium plate and screws in my neck. This is as far as I could put my hands behind my head." *Id.* ¶ 36. Then, he said, Officer Santamaria forced his hands together behind his head, handcuffed them, and over Kirby's protestations that he could not remain kneeling with his hands behind his head because of the pain caused by his fused neck and

3

knee injuries, keeping him in that position for 10 to 20 seconds. *Id.* ¶¶ 42–43. As Kirby recalls it, at this point, a sergeant arrived at the scene and reapplied the handcuffs behind his back. *Id.* ¶ 44. In contrast, sounding like the retelling of a different car stop, Officer Santamaria testified that, following his discharging his weapon, he requested a supervisor and additional units to respond, and that Kirby was still seated in his vehicle when the first officer arrived. Defs.' 56.1 ¶ 25. It was that officer, Officer Jeff Cline, who, Officer Santamaria testified, ordered Kirby to step out of the Escalade. *Id.* Officer Cline then purportedly patted Kirby down, who was kneeling for a short time during the pat-down. *Id.* ¶ 26. Officer Santamaria remembers Kirby standing up on his own, unhandcuffed, after the completion of the pat-down. *Id.*

It is undisputed that Kirby underwent a field sobriety test, in which Officer Santamaria did not participate. Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27. In receiving the sobriety test, Kirby says he was made to walk heel-to-toe and to tilt his head back and touch his nose, neither of which he was able to do, he claims because of his preexisting neck and knee injuries. Pl.'s Counterstatement ¶¶ 50–51. Having failed the sobriety test, Kirby was arrested and transported to the Seventh Precinct, where he was charged with operating a motor vehicle while intoxicated in the first degree, operating a motor vehicle while impaired by alcohol, and traffic violations. Dkt. 33-14, Defs.' 56.1, Ex. A, at 1. He was released on his own recognizance, Pl.'s Counterstatement ¶ 58, and he pleaded guilty to a lesser charge of driving while intoxicated and to being impaired by alcohol. *Id*. *But see* Pl.'s 56.1 ¶ 14, Pl.'s Counterstatement ¶ 59 (contending Kirby pleaded guilty to driving while impaired due to his having taken his pain medication, not for driving drunk).

Over a six-month period immediately following the arrest, Kirby received weekly massage treatment for his neck, back and knee injuries, the same sort of treatment he had

4

previously been receiving for his preexisting injuries, but only once a month in frequency. Pl.'s 56.1 ¶ 15. After this six-month period, he received treatment two to three times a month. *Id.* He also began treatment for post-traumatic stress disorder ("PTSD") within a month after his arrest. Pl.'s Counterstatement ¶¶ 95–98. According to Kirby's deposition testimony, he suffered a heart attack in the September following his arrest because, he contends, of anxiety and a panic attack that resulted from his arrest. Dkt. 33-20, Harris-Marchesi Decl., Ex. A ("Kirby Dep."), at 49 (194:25–195:21). Kirby does acknowledge, though, that the cardiac episode was not his first— he had also suffered an earlier heart attack in 1991 and was still taking medication as a result of it. *Id.* at 49–50 (196:20–197:6).

## Legal Standard

Summary judgment is appropriate if, construing all facts in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018). Where the nonmoving party bears the burden of persuasion at trial, the moving party must identify portions of the record that either demonstrate the absence of a genuine dispute or the absence of evidence supporting the nonmoving party's case. Fed. R. Civ. P. 56(b)(1); *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004).

Only those facts that "might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.,* 106 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). A genuine dispute over such material facts is one in which "a reasonable jury could return a verdict for the nonmoving party." *Id.* In making its determination of whether there exists a genuine dispute, the Court does not weigh the evidence or assess the credibility of witnesses, including the parties. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

A nonmoving party, in opposing a motion for summary judgment, "may not rely solely on 'conclusory allegations or unsubstantiated speculation' in order to defeat" the motion. *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 188 (E.D.N.Y. 2014). Rather, "[t]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Kindle v. Dejana*, 238 F. Supp. 3d 353 (E.D.N.Y. 2017) (internal quotation marks and citation omitted). Only "[w]here it clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *Weiss v. Nat'l Westminister Bank PLC*, 278 F. Supp. 3d 636, 640 (E.D.N.Y. 2017) (quoting *Gall v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## Discussion

I.    Excessive Force

Kirby's § 1983 excessive force claim names Officer Santamaria, the County, and Officers John Does 1–4. The wrongful conduct plaintiff alleges is judged against a standard of "objective reasonableness."[2] *Graham v. Connor*, 490 U.S. 386, 392, 109 S. Ct. 1865, 1869, 104 L. Ed. 2d 443 (1989); *see also* U.S. Const. amend. IV (protecting against "unreasonable searches and seizures"). A determination of reasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," with the recognition that officers often must

---

[2] Although plaintiff alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights, Am. Compl. at 9, the Court analyzes this aspect of his claim, which arises out of an investigatory stop and his subsequent arrest, as one under the Fourth Amendment only. *See Kerman v. City of New York*, 261 F.3d 229, 238 (2d Cir. 2001). The particulars of the seizure, at least, go to objective reasonableness and damages but do not serve to implicate other constitutional provisions.

make split-second judgments in response to "tense, uncertain, and rapidly evolving" circumstances. *Id.* at 396–97 (internal quotation marks and citations omitted). Courts, in their assessments, must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Summary judgment against a plaintiff asserting an excessive force claim is appropriate only if "no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). Despite this exacting standard, summary judgment is nevertheless warranted, for example, as to a claim for compensatory damages, if a plaintiff cannot trace his injuries to the force applied. *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (requiring § 1983 plaintiff to "prove that his injuries were proximately caused by the constitutional violation"). In addition, a plaintiff cannot recover as a matter of law if the evidence does not support that "the force applied was more than *de minimis*." *Romano v. Howarth*, 998 F. 2d 101, 105 (2d Cir 1993); *see also Graham*, 490 U.S. at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by an arresting officer with the arrested person is actionable.").

The parties lock horns over two distinct series of events that occurred on the night of Kirby's arrest. Defendants argue that the first series, involving Officer Santamaria's shooting at

7

but missing Kirby, cannot support Kirby's excessive force claim because Kirby was not physically harmed. Defs.' Mem at 7–8. Kirby does not dispute that he was physically unscathed, but he points to record evidence showing he was treated for PTSD following the shooting, and he argues that his diagnosis constitutes actionable injury. Pl.'s Resp. Mem. ("Resp."), at 9–13, Dkt. 33-17. As for the second series, focusing on Kirby's handcuffing, defendants contend that the evidence clearly supports a finding that the forced applied was *de minimis*. Defs.' Mem. at 8–10. Kirby retorts that the handcuffing exacerbated preexisting injuries that required increased visits for medically necessary massages and stretching. Resp. at 11.

Not only is a circuit precedent on the issue joined by the conduct giving rise to plaintiff's first series claim lacking, the law developed by the district courts in this circuit has yet to crystalize as to whether, specifically, a missed bullet can support a finding of excessive force. As a consequence, both sides point to supportive precedent.

Building from the ground floor, a § 1983 plaintiff, like any other, must demonstrate he has standing, showing he has suffered a "concrete and particularized" injury "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal alterations omitted) (quoting *Simon v. Eastern Ky. Welfare Rights* Organization, 426 U.S. 26, 41–42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)); *see also Spokeo, Inc. v. Robins*, 578 U.S. —, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Defendants' argument appears to rest on this fundamental rule of jurisprudence; that is, no harm, no standing, no case. Case authority supporting the dismissal of § 1983 excessive force claims brought by a plaintiff not struck by the arresting officer neatly dovetails with the federal standing doctrine, and it is no surprise that the absence of any showing

8

of injury whatsoever has been the death knell for excessive force claims. *See, e.g.*, *Landy v. Irizarry*, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

Ultimately, though, the legal theory animating the defense argument—that there must be a showing of more than a *de minimis* injury—in fact rests upon an assessment of the nature of the force alleged to have caused the claimed injury. Paradigmatic of this principle is this district's decision in *Roundtree v. City of New York*, which, in granting a Rule 12(b)(6) motion to dismiss an excessive force claim, held that alleged injuries of "emotional pain and suffering" stemming from a "push" were insufficient to support the claim. 778 F. Supp. at 622. To hold otherwise, the decision noted, would be to "transform the constitutional wrong of excessive force in arrest into the common law tort of battery; and it would reduce the holding in *Graham* into an empty proposition against which no use of force is reasonable as a matter of law." *Id.* Similarly, in *Evans v. Solomon*, 681 F. Supp. 2d 233, 252 (E.D.N.Y. 2010), defendants were entitled to summary judgment on plaintiff's "garden variety" excessive force claim after plaintiff was unable to show any injury resulting from an arresting officer pushing him against his vehicle and twisting his arm behind his back. Heeding *Graham*'s admonition that "not every push or shove" runs afoul of the constitution, these decisions balanced largely uncontroversial applications of force with minimal to no injury to conclude that the force applied was *de minimis*, and therefore, reasonable. *See also Johnson ex rel. Johnson v. Cty. of Nassau*, No. 09-cv-4746 (JS) (MLO), 2010 WL 3852032, at *3 (E.D.N.Y. Sept. 27, 2010) (a single act of physical force—grabbing an arrestee by the arm—did not proximately cause his stomach aches and headaches); *Russo v. Port Authority of New York & New Jersey*, No. 06-cv-06389 (RRM) (CLP), 2008 WL 4508558, at *4–5 (E.D.N.Y. Sept. 30, 2008) (holding that symptoms consistent with PTSD, observed over

9

two years after an arrest that involved only a *de minimis* use of force, were insufficient to overcome summary judgment). The facts here, however, are not as conducive to such a reductive formulation. Although Kirby indeed challenges the force used to arrest him as excessive—facts further explored below—he was also once shot at. This case, then, is distinguishable from other "push or shove" cases, which can light the Court's path, through unsettled territory, only so much.

The stumbling block, of course, is whether an injury claimed to flow in the complete absence of physical contact can ever be constitutionally concrete to support standing. While the signals are decidedly unclear, the Second Circuit has suggested that physical contact with the plaintiff is not a necessary predicate in stating an excessive force claim. *See Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) (noting, in dicta, that alone, "a gunpoint death threat issued to a restrained and unresisting arrestee" may well constitute excessive force); *see also McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 698–99 (S.D.N.Y. 1999) (granting summary judgment in favor of officers who shot at, but missed, the plaintiff when plaintiff alleged no injury whatsoever, but holding that, as a general proposition, "shooting at someone, obviously, can state a claim for excessive force"); *cf. Terebesi v. Torreso*, 764 F.3d 217, 240 (2d Cir. 2014) (an officer's discharge of his weapon during the execution of a search "is subject to Fourth Amendment scrutiny, regardless of whether he hits anyone"). Significantly, the vast majority of other circuits are in accord with this reasoning.[3]

---

[3] *See Mlodzinski v. Lewis*, 648 F.3d 24, 37 (1st Cir. 2011) (holding that, notwithstanding plaintiff's allegation of serious physical injury, the pointing of a firearm at a non-threatening, unarmed teenager for seven to ten minutes constituted excessive force); *Binay v. Bettendorf*, 601 F.3d 640, 650–51 (6th Cir. 2010) (summary judgment for defendant officers not appropriate when they detained suspects at gunpoint during a search for narcotics and wore masks, which may have "added to an environment of intimidation and terror"); *Baird v. Renbarger*, 576 F.3d

Here, Kirby has supplied evidence tending to show that he suffered PTSD as a result of the shooting, notwithstanding his concession that he was not, prior to his arrest, touched in any way. *See, e.g.*, Kirby Dep. at 3 (10:15–25); Dkt. 33-32, Harris-Marchesi Decl., Ex. M-1 ("Dr. Barbee Progress Notes I"), at 2–4, 6, 25–27, 29–36. He also offers numerous cases in which psychological harm, in conjunction with physical injury, constituted a recoverable injury.[4] Resp. at 11–12. Indeed, there is ample support for holding psychological injury may support a jury's finding of excessive force. *See, e.g.*, *Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 137 (2d Cir. 1993) (affirming jury award that compensated for both physical injuries and PTSD); *Jackson v. Tellado*, No. 11-cv-3028 (PKC) (SMG), 2018 WL 4043150, at *5–7 (E.D.N.Y. Aug. 24, 2018) (notwithstanding remittitur, awarding compensatory damages for injuries that included psychological harm) (E.D.N.Y. Aug. 24, 2018); *Gonzalez v. City of New York*, No. 01-cv-5584 (JG), 2006 WL 8435010, at *12 n.15 (E.D.N.Y. Jan. 3, 2006) (evidence of PTSD, in conjunction with other physical injuries, was sufficient to allow a jury to determine whether the force at issue was excessive); *see also Davis v. Rennie*, 264 F.3d 86, 111 (1st Cir. 2001) (PTSD sufficient to

---

340, 344 (7th Cir. 2009) (holding that "[p]laintiffs need not show physical injury in order to sustain an excessive force claim," and that a reasonable jury could find that the pointing of a submachine gun to detain a suspect constituted unreasonable force); *Cortez v. McCauley*, 478 F.3d 1108, 1131 (10th Cir 2007) (en banc) ("Physical contact is not required for an excessive force claim—patently unreasonable conduct is."); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (brandishing a firearm at an unarmed suspect may constitute excessive force, even in the absence of physical injury); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (the use of guns and handcuffs to detain a suspect constituted a Fourth Amendment violation in the absence of evidence supporting the reasonableness of that force).

[4] Kirby also cites *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 WL 233994, at *20 (D. Conn. Jan. 25, 2012) for the proposition that a diagnosis of PTSD, absent physical injury, is sufficient to support an excessive force claim. *See* Resp. at 12. That case, however, involved a laceration to the plaintiff's head allegedly following an arresting officer's application of physical force, and the language supporting PTSD as a cognizable injury was written in the context of that plaintiff's state-law intentional infliction of emotional distress claim. *Id.* at *7–8, *20–21.

11

support jury's finding of excessive force, even in the absence of physical injury).

Sensing an Achilles heel, defendants are quick to label the batch of precedents advanced by plaintiff as inapposite because none flat out recognizes the validity of an excessive force claim unhinged to physical contact. That argument, however, erroneously conflates the absence of physical injury with the reasonableness of the force. As discussed above, although the absence of physical injury is often dispositive of reasonableness, a plaintiff may always defeat a summary judgment motion by supplying evidence that the force applied by an officer was unreasonable, and that the plaintiff suffered compensable injury as a result. To put it another way, rather than focusing on what plaintiff's cases do not say, it is what they do say that is dispositive: psychological injury can be compensable in an excessive force case. Bathed in that light, having created a genuine issue as to the circumstances leading to Officer Santamaria's discharging his firearm and the extent of Kirby's injuries, Kirby is entitled to a jury's determination of reasonableness.

Alternatively, seeking a technical knockout, defendants argue that, under New York law, only a designated medical expert may present evidence of PTSD, and that Kirby's failure to designate a medical expert, as mandated by Federal Rule of Civil Procedure 26(a)(2), is fatal to his claim of actual injury and mandates judgment in their favor. Reply at 6–7. But, whether Kirby has provided all that is necessary to prevail on his claims is not the issue before the Court now. All that is in issue is whether he has made a sufficient showing that a genuine issue exists. And, contrary to the argument defendants advance, medical records evidencing PTSD may, on a summary judgment motion, be considered by the Court and may form the basis for defeating the motion, even in the absence of expert medical testimony. *See, e.g.*, *Gonzalez*, 2006 WL 8435010, at *12 n.15 (E.D.N.Y. Jan. 3, 2006) (a psychological evaluation containing PTSD

diagnosis was sufficient to create a genuine dispute). This argument cannot carry the day for defendants with respect to the first series of conduct encompassed in Kirby's excessive force claim.

As for the second series of events—Kirby's contention that the arresting officers used excessive force in handcuffing him after he was ordered out of the Escalade—the answer is clear. They did not. The facts of Kirby's arrest are virtually indistinguishable from the abundance of handcuffing cases in this circuit in which the force used to handcuff or otherwise physically detain an arrestee was *de minimis*. *See, e.g.*, *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 245–46 (E.D.N.Y. 2014); *Evans*, 681 F. Supp. 2d at 252–53; *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 476, 481 (W.D.N.Y. 2008); *Williams v. City of New York*, No. 05-cv-10230 (SAS), 2007 WL 2214390, at *12 (S.D.N.Y. July 26, 2007). Simply, construing the facts in the light most favorable to Kirby, including the recognition that his preexisting medical conditions caused him pain during his arrest, evidence that he was commanded to kneel and place his hands behind his head for only 10 to 20 seconds does not, as a matter of law, constitute excessive force.

II.     Qualified Immunity as to the Excessive Force Claim Against Officer Santamaria

An official, acting under color of state law, is shielded by qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). This is so "even if her conduct resulted from 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Breitkopf*, 41 F. Supp. 3d at 243–44 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation,"

13

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), its availability should be determined "at the earliest possible stage in litigation." *Breitkopf*, 41 F. Supp. 3d at 244 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).

The right to be free from excessive force during the course of an arrest is clearly established. *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018). Therefore, qualified immunity from a claim of excessive force is warranted only if it were "objectively reasonable for [officials] to believe that their conduct did not violate the Fourth Amendment." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). If material facts are in dispute such that reasonable finders of fact may disagree as to whether the force used was excessive, the officer is not entitled to qualified immunity. *Id.*; *see also Breitkopf*, 41 F. Supp. 3d at 250–51.

Construing, as the Court must, the facts in the light most favorable to Kirby, *see Kerman*, 261 F.3d at 232, it cannot conclude Officer Santamaria is entitled to qualified immunity as to Kirby's excessive force claim stemming from the shooting. If, indeed, Kirby was compliant and Officer Santamaria had no reason to believe he was armed or dangerous before shooting at him, no reasonable officer could conclude that Kirby's constitutional rights were not violated. *See Jackson*, 236 F. Supp. 3d at 663–69. Accordingly, although a jury may later credit Officer Santamaria's account and find that the force he employed was reasonable under the circumstances, the markedly divergent accounts of the events surrounding Kirby's arrest preclude Officer Santamaria's entitlement to qualified immunity on this claim now.

III.     Equal Protection and Conspiracy

Put plainly, Kirby's claims of the denial of, and conspiracy to deny him of, equal protection, brought under 42 U.S.C. §§ 1981 and 1985, are devoid of evidentiary support. In his amended complaint, he alleges both the shooting and his arrest were "motivated by race and

14

color, . . . were marked by the conduct of Defendants to support the motivation," Am. Compl. ¶ 68, and were a result of a conspiracy to deprive him of a litany of constitutional rights because of his race and color. *Id.* ¶ 56. These claims do not pass beyond the category of suspicion and speculation.

Kirby tries to dress his suspicion and speculation in the garb of circumstantial evidence to create a genuine dispute of fact as to an inference of discrimination. Resp. at 15; *see Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101–02 (2d Cir. 2001). This rechristening does not cement into admissible proof.

To defeat summary judgment, Kirby must identify evidence of defendants' discriminatory intent on the basis of his race, which "must be a substantial or motivating factor behind the behavior complained of." *Wong v. Yoo*, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009). Although acts of violence may support an inference of discrimination, they are not, without more, sufficient. *Id.* at 69–70. Here, Kirby offers only that he is African American, and that Officer Santamaria may have seen that he was African American prior to his discharging his weapon. *See* Resp. at 15–16. Standing alone, this evidence cannot support Kirby's § 1981 claim of discrimination, let alone that defendants conspired to discriminate against him and deprive him of his constitutional rights. Accordingly, defendants are entitled to summary judgment as to these claims as a matter of law.

IV.     *Monell* Liability

A local government faces liability under § 1983 if its official policy or custom causes its employee to violate another's civil rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692–95, 98 S. Ct. 2018, 2036–38, 56 L. Ed. 2d 611 (1978); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "[M]unicipal inaction such as the persistent failure to

discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). Kirby, pointing to the County Internal Affairs Unit's ("IAU") decision not to interview him during the course of its investigation of Officer Santamaria's conduct, argues that its recommendation that Officer Santamaria not be disciplined was unconstitutional. Resp. at 18. Even accepting Kirby's contention that the County was obligated to interview him—a contention wholly unsupported by the evidence—such a decision hardly constitutes a "persistent failure to discipline subordinates." *Id.* In the absence of any evidence to support an inference of an unconstitutional policy or custom, *Monell*, 436 U.S. at 695, there is no genuine issue as to *Monell* liability. The claim fails, and the County is entitled to judgment.

V.      Supplemental Jurisdiction

Federal courts shall, prescriptively, exercise supplemental jurisdiction over state-law civil claims that share a "common nucleus of operative fact" with claims over which they have original jurisdiction, *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1753 n.1, 204 L. Ed. 2d 34, *reh'g denied*, 140 S. Ct. 17, 204 L. Ed. 2d 1172 (2019), such that they "form part of the same case or controversy." 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557, 125 S. Ct. 2611, 2619, 162 L. Ed. 2d 502 (2005). In the absence of viable federal claims, Courts may decline to exercise jurisdiction over remaining state law claims and dismiss the case without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988). Here, however, the survival of Kirby's § 1983 excessive force claim relating to the shooting compels the Court to exercise supplemental jurisdiction over his state law claims against Officer Santamaria as to that incident, which undisputedly share a

common nucleus of operative fact with that federal claim.[5]

Nevertheless, Kirby's negligence claim against Officer Santamaria is barred. "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Pagan v. City of New York*, No. 15-cv-05825 (LDH) (RLM), 2019 WL 8128482, at *9 (E.D.N.Y. Mar. 28, 2019) (holding that "negligence claims are impermissibly inconsistent with claims for excessive force, which are predicated on intentional conduct"). In addition, as Kirby was untouched by Officer Santamaria's discharged round, his claim for battery cannot be maintained as a matter of law. *See Bower v. City of Lockport,* 115 A.D.3d 1201, 1204, 982 N.Y.S.2d 621, 625 (App. Div., 4th Dep't 2014) ("The elements of battery are bodily contact, made with intent, and offensive in nature.") (internal quotation marks omitted). And, in the absence of even a scintilla of evidence that Officer Santamaria discharged his firearm pursuant to any "regularly issued process, either civil or criminal," his state law claim for malicious abuse of process must be similarly dismissed. *Ettienne v. Hochman*, 83 A.D.3d 888, 888, 920 N.Y.S.2d 717 (App. Div., 2d Dep't 2011) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 469 N.E.2d 1324, 1326 (1984)). As a result, only Kirby's state law claim of intentional infliction of emotional distress survives summary judgment.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted as to

---

[5] In the absence of any viable federal claims against the County or the John Doe defendants, however, the Court declines to retain jurisdiction over any state law claims brought against them by Kirby. *See Escobar v. City of New York*, No. 05-cv-3030 (ENV) (CLP), 2007 WL 1827414, at *4 (E.D.N.Y. June 25, 2007).

Kirby's conspiracy claim (Count 3) equal protection claim (Count 4) and *Monell* liability claim (Count 2), and is denied as to Kirby's excessive force claim (Count 1).

Furthermore, the Court retains jurisdiction over Kirby's state-law claim of intentional infliction of emotional distress (Count 8) against Officer Santamaria only, and only as to the shooting; Kirby's remaining state law claims (Counts 5–7) are dismissed in their entirety.

So Ordered.

Dated:   Brooklyn, New York
        March 19, 2020

                    /s/ Eric N. Vitaliano
                    ERIC N. VITALIANO
                    United States District Judge